UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| JIMMY BOYD, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 20-3024 |
| | ) | |
| TODD SHEFFLER, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |

## SUMMARY JUDGMENT ORDER

Plaintiff, proceeding pro se and presently incarcerated at Centralia Correctional Center, brought the present lawsuit pursuant to 42 U.S.C. § 1983 alleging First Amendment claims for retaliation and denial of access to the courts, and an Eighth Amendment claim for deliberate indifference to a serious medical need. The matter comes before this Court for ruling on the parties' respective Motions for Summary Judgment. (Docs. 136, 139).

## SUMMARY JUDGMENT STANDARD

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). All facts must be construed in the light most favorable to the non-moving party, and all reasonable inferences must be drawn in his favor. *Ogden v. Atterholt*, 606 F.3d 355, 358 (7th Cir. 2010). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that

might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## FACTS

Plaintiff was incarcerated at Western Illinois Correctional Center from March 29, 2017, to June 6, 2018. Defendants were employed at the facility in the following capacities: Defendant Sheffler, Smith, Durrell, and Crary were correctional officers; and, Defendant Goins was a grievance officer.

On February 13, 2018, Defendant Sheffler handcuffed Plaintiff and escorted him from the healthcare unit, where Plaintiff was waiting to discuss a possible diabetes diagnosis, to the segregation unit. Pl. UMF 1-3. Defendant Smith issued Plaintiff a disciplinary report for a razor blade he claimed to have found in Plaintiff's back pocket during a search that ensued. (Doc. 140-4 at 2). An unidentified official inventoried Plaintiff's personal property upon his transfer to segregation; Plaintiff signed off on it the same day. *Id.* at 3-5.

Plaintiff met with a licensed clinical social worker a couple hours later. The social worker noted that Plaintiff requested her to contact the FBI, his mother, and local media because state officials were retaliating against him for cooperating with law enforcement, "preventing him from submitting legal inventory," and "out to kill [him]." (Doc. 140-6 at 3). Plaintiff stated he intended to go on a hunger strike because the razor Defendant Smith allegedly found was not his. *Id.* The social worker opined that Plaintiff did not meet the criteria to be put on crisis watch given Plaintiff's lack of previous mental health issues and his denials of thoughts, plans, or intent to harm himself or others. *Id.* Plaintiff refused a food tray two hours later and declared a hunger strike that lasted four-and-one-half days. (Doc. 140-4 at 1) (hunger strike declared on Feb. 13,

2018, at 3:49 p.m.); (Doc. 140-6 at 2) (Plaintiff ate 90% of his food tray on Feb. 18, 2018, at 10:10 a.m.).

According to the medical records, Plaintiff saw a nurse on February 16, 2018, in response to his request for a crisis team. (Doc. 140-6 at 1-2). The nurse noted that Plaintiff denied thoughts of self-harm or harming others, and she opined that Plaintiff did not need to be placed on crisis watch. *Id.* at 2. Plaintiff reiterated his desire to remain on hunger strike. *Id.*

Plaintiff testified that nurses did not take daily vitals, nor did he see any other healthcare professional during his hunger strike despite his efforts to request medical care from unidentified nurses and officers as they walked past his cell. Pl.'s Dep. 25:1-4, 31:10-15, 32:4-5 ("I would see a nurse walk by and…yell out the door to them."). He testified that he did not have a specific medical condition for which he sought treatment; he only "wanted to ensure that everything was okay with [him]." *Id.* 27:9-10. Plaintiff has not suffered any lasting physical medical issues resulting from the hunger strike. *Id.* 28:22-29:1, 30:14-17. He never returned to healthcare to discuss his possible diabetes diagnosis. *Id.* 32:15-18.

Plaintiff testified that Defendants Durell and Crary either did not facilitate his requests to see medical staff, or, on one occasion, told unidentified officials that Plaintiff did not need to see the doctor. *Id.* 26:13-19. The record does not disclose what, if any, actions these defendants took in response to Plaintiff's complaints about the disciplinary ticket or his property. Plaintiff does not have evidence showing that Defendant Durell's actions were motivated by any First Amendment activity. *Id.* 72:14-17.

Prison officials expunged Plaintiff's disciplinary ticket for reasons not disclosed in the record and released him from segregation on February 19, 2018. Upon receipt of his property, Plaintiff discovered that that his television, typewriter, fan, food, hygiene supplies, clothing, and

shoes had been destroyed. *Id.* 12:21-13:2. Plaintiff attributes the destruction to Defendant Sheffler's alleged failure to "ensure that [Plaintiff's] personal properties…were protected" during his confinement in segregation, but he otherwise does not have any evidence showing how and when his property was destroyed or by whom.[1] *Id.* 46:12-13 ("[Defendant Sheffler] broke all my stuff, or…somebody else did."); *id.* 48:10-12 ("Q…Do you know when your property was lost or destroyed? A. No.").

Plaintiff filed an emergency grievance about these events requesting a transfer to a different facility, release from segregation, restoration of privileges, and return of his missing property. (Doc. 140-4 at 8-13). The warden expedited review of the grievance on March 16, 2018, and the grievance office received it same day. *Id.* at 13. Defendant Goins recommended denial of Plaintiff's grievance as moot on April 18, 2018, and informed Plaintiff that he may request a transfer through his counselor. *Id.* at 7. The warden concurred. *Id.*

Plaintiff had been litigating a habeas corpus petition in the Northern District of Illinois since 2012. He testified that the destruction of his legal property frustrated his "potential…to continue to file other proceedings…such as a successive post-conviction petition, a relief of judgment, 2-1401 petition, or things of that nature." Pl.'s Dep. 44:19-23. The docket in Plaintiff's habeas corpus case indicates that Plaintiff was able to comply with that court's orders, to file an amended petition, and to seek other relief. (Doc. 140-2). The court denied Plaintiff's petition on its merits on February 11, 2019. *Id.* at 10; (Doc. 140-7).

---

[1] Documents Plaintiff filed in a habeas corpus action in the Northern District indicate that Plaintiff complained about officials breaking his television in January 2018, before the events giving rise to this case occurred. *Boyd v. Watson*, No. 12-2965, ECF No. 69 at 61-62 (N.D. Ill.).

## ANALYSIS

### First Amendment Retaliation

To prevail on a retaliation claim, the Plaintiff must show that he engaged in activity protected by the First Amendment; he suffered a deprivation that would likely deter First Amendment activity in the future; and the First Amendment activity motivated the decision to take retaliatory action. *Daugherty v. Page*, 906 F.3d 606, 610 (7th Cir. 2018); *Bridges v. Gilbert*, 557 F.3d 541, 553 (7th Cir. 2009). Once a plaintiff establishes a prima facie case of retaliation, "[t]he burden then shifts to the defendants to show that they would have taken the action despite the bad motive." *Mays v. Springborn*, 719 F.3d 631, 635 (7th Cir. 2013). Plaintiff's other litigation and grievance activity are protected under the First Amendment.

Plaintiff's habeas corpus petition had been pending since 2012, and Plaintiff has not produced any evidence permitting a reasonable inference that any defendants' actions were related to this petition or that they knew about it. *Consolino v. Towne*, 872 F.3d 825, 830 (7th Cir. 2017) (a plaintiff must "produce evidence that the defendant knew about the protected speech" to establish that his First Amendment activity motivated a defendant's adverse actions). Plaintiff's grievance activity did not occur until after he was released from segregation, negating any inference that Defendants Sheffler, Smith, Durell, and Crary acted because of it. Plaintiff cannot prevail solely on his claim that Defendants violated prison property regulations. *Lennon v. City of Carmel*, 865 F.3d 503, 509 (7th Cir. 2017).

Plaintiff asserts that Defendant Goins delayed addressing Plaintiff's emergency grievance in retaliation for filing it. The grievance office did not receive the grievance until after Plaintiff's disciplinary ticket had been expunged and Plaintiff's property had apparently been damaged, nor was the grievance process the proper avenue to request a transfer. The record does not permit a

reasonable inference that Defendant Goins' alleged delay caused or exacerbated any deprivation Plaintiff suffered. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's First Amendment rights.

### First Amendment Denial of Access to the Courts

Prisoners have a right to meaningful access to the courts under the First Amendment. *Bounds v. Smith*, 430 U.S. 817, 828 (1977). To establish a constitutional violation, an inmate must show that prison officials denied him access to the courts, and that the denial caused him to lose a potentially meritorious claim. *Lewis v. Casey*, 518 U.S. 343, 351 (1996); *Marshall v. Knight*, 445 F.3d 965, 968 (7th Cir. 2006).

The docket in Plaintiff's habeas corpus action does not disclose that Plaintiff suffered prejudice in that case because of the Defendants' actions—Plaintiff was able to comply with that court's orders, file an amended petition, and seek other relief. The court denied Plaintiff's petition on its merits without reference to any procedural shortcomings attributable to this case. Plaintiff does not provide sufficient detail regarding the other intended petitions to show that he suffered the requisite injury. Speculation that potential claims may have been affected is not enough. *See Stathas v. Smith*, 795 F. App'x 470, 471 (7th Cir. 2020) (concrete injury required; speculation not enough). The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's First Amendment right to access to the courts.

### Eighth Amendment Medical Claim

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104-05 (1976). To prevail, a plaintiff must show that the prison official acted with deliberate indifference to a serious medical need. *Id.* at 105. Claims of negligence, medical malpractice, or disagreement with a prescribed course of treatment are not sufficient.

*See Petties v. Carter*, 836 F.3d 722, 729-30 (7th Cir. 2016) (en banc); *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

"An objectively serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012) (internal quotations omitted). Plaintiff testified that he did not have a specific medical need for which he sought treatment, and the record does not otherwise disclose any medical condition Plaintiff suffered.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prison official's subjective awareness of a risk "is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Id.* at 842.

Plaintiff saw a mental health official shortly after he requested a crisis team. The notes of that encounter disclose that the official concluded that Plaintiff did not require placement on crisis watch given his lack of a previously diagnosed condition and denial of intentions to harm himself or other. A nurse came to the same conclusion a few days later based on the same statements. At best, the record discloses that mental health and medical staff refused to take the remedial actions Plaintiff desired or that Defendants Sheffler, Smith, Durell, and Crary delayed Plaintiff's access to medical care.

Plaintiff's disagreement with mental health or medical staff about the diagnosis or course of treatment is not sufficient to impose constitutional liability. *Arnett v. Webster*, 658 F.3d 742, 754 (7th Cir. 2011) ("[A]n inmate is not entitled to demand specific [medical] care."); *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996) (a mere disagreement with the course of treatment, standing alone, is not sufficient to attach constitutional liability). The record does not permit a reasonable inference that the delay Plaintiff endured resulted in an actionable injury. *Williams v. Liefer*, 491 F.3d 710, 714-15 (7th Cir. 2007) (delay must cause some degree of harm). The officials who allegedly ignored Plaintiff's requests for help as they walked past his cell are not defendants in this case. The Court finds that no reasonable juror could conclude that Defendants violated Plaintiff's Eighth Amendment rights.

### PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff seeks summary judgment against Defendant Sheffler and Smith. Viewed in the light most favorable to Defendants, the record does not permit a reasonable inference that these Defendants violated Plaintiff's constitutional rights. Plaintiff's motion is denied.

**IT IS THEREFORE ORDERED:**

1) **Plaintiff's Motion for Partial Summary Judgment [136] is DENIED.**

2) **Defendants' Motion for Summary Judgment [139] is GRANTED. The clerk of the court is directed to enter judgment in favor of Defendants and against Plaintiff. All pending motions not addressed below are denied as moot, and this case is terminated. Plaintiff remains responsible for the $350.00 filing fee.**

3) **If Plaintiff wishes to appeal this judgment, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal in forma pauperis MUST identify the issues the Plaintiff will present on appeal to assist the court in determining whether the appeal is taken in good faith. See Fed. R. App. P. 24(a)(1)(c); *see also Celske v Edwards*, 164 F.3d 396, 398 (7th Cir. 1999)(an appellant should be given an opportunity to submit a statement of his grounds for appealing so that the district judge "can make a reasonable assessment of the issue of good faith."); *Walker v. O'Brien*, 216 F.3d 626, 632 (7th**

**Cir. 2000) (providing that a good faith appeal is an appeal that "a reasonable person could suppose…has some merit" from a legal perspective). If Plaintiff does choose to appeal, he will be liable for the $505.00 appellate filing fee regardless of the outcome of the appeal.**

Entered this 15th day of March, 2023.

*s/Sara Darrow*
SARA DARROW
CHIEF U.S. DISTRICT JUDGE
